CITY OF HAMILTON, APPELLEE, *v.* HAUSENBEIN, APPELLANT.

(No. 1075—Decided December 6, 1956.)

*Mr. Clem Imfeld, Jr.,* for appellee.
*Messrs. Waite, Schindel & Bayless, Mr. Philip J. Schneider* and *Mr. David P. Tarbell,* for appellant.

MATTHEWS, J. The defendant, appellant herein, was found guilty by the Municipal Court of the city of Hamilton of a violation of Section 75-7730 of the Ordinances of the city of Hamilton, which provides:

"That it shall be unlawful for any railroad company, its

agents, servants or employees or any other person, to cause the switching, hooking or unhooking, or bumping of any railroad equipment including locomotive box cars, tank cars, or hoppers on that portion of the railroad right-of-way adjoining or in any predominately residential area in the city of Hamilton, Ohio, between the hours of 10:00 o'clock p. m., and 7:00 o'clock a. m., so as to unreasonably disturb, by loud and greatly annoying noise, any householders or residents of such residential area.''

The defendant was fined $50 and costs. This is an appeal from that judgment.

The defendant was an engineer employed by the Baltimore & Ohio Railroad Company on March 27, 1955, and was operating a diesel switch engine on a side track or belt line terminating at the factory of The Champion Paper Company. Along the course of this side track there were at least two other business establishments to which spurs extended and one spur curving somewhat from the sidetrack upon which freight cars were stored awaiting the needs of the businesses located along the belt line. This storage spur was located near the junction of the belt line with the main track. This belt line was more than two and a half miles long, was located on the private right-of-way of the Baltimore & Ohio Railroad Company, and had been so located and in operation for many years, long before any of the homes in which the witnesses called by plaintiff, appellee herein, resided. No member of the public is in a position to complain at this time about the location of this belt line, or to contend that it should have been located elsewhere. The territory through or near which the belt line extended was part residential and part commercial or industrial, as zoned by the city of Hamilton long after the establishment of this belt line. In those areas zoned as residential, it is a nonconforming use, and, as clearly railroading is not a nuisance per se, the right to continue its operation remained unaffected by the zoning.

It so happened that after the belt line was established, many residences were built in the neighborhood where the belt line joined the main track, so that in order to serve the industries along the belt line it was necessary for the switching operation to take place near those residences.

It is certainly a permissible inference that the industries

along this belt line had increased, and that as a result more freight cars passed along the belt line and in and out of the storage yard. That fact and the further fact that the spur track in the storage yard was a track leading into a factory until a few years ago when the operation of this factory was discontinued and the spur track devoted to storage of cars resulted in an increased use of the belt line at this junction. The Baltimore & Ohio Railroad Company leased the spur and has been using it for storage of cars since then. It is on private property.

To adequately serve the industries along this belt line, it is necessary for the Baltimore & Ohio Railroad Company to switch freight cars in and out of this storage yard and along this belt line at all hours of the day and night.

Before considering the incidents on the date as charged in the affidavit upon which the warrant was issued, it seems appropriate that we take notice of the appellant's claim that this ordinance is inherently unconstitutional. The ordinance penalizes any railroad for making loud and greatly annoying noises by the switching, hooking or unhooking, or bumping of any railroad equipment in specified hours of the night season on that portion of its right of way "adjoining, or in any predominately residential area," so as to unreasonably disturb the householders in such residential area.

It is said that the ordinance violates both the due process and equal protection clauses of the Constitutions of Ohio and the United States, and, also, if applied to this railroad would violate the commerce clause of the United States Constitution.

To bring the ordinance in conflict with the due process clause, the appellant seems to urge that it prohibits the necessary and normal noises incident to the customary method of operating a railroad. We are of the opinion that the terms of the ordinance do not justify this construction. It is only such noises as unreasonably disturb the householders that are prohibited. We do not think that the normal necessary noises incident to the operation of a railroad can be said legally to unreasonably disturb any one. The reasonableness or unreasonableness of the noise must be determined under all the circumstances. Some of the circumstances are that the defendant

took upon itself the duty of serving the public without discrimination and established this belt line in a district which was not residential at the time; and the complainants thereafter built their residences knowing of the nearness of the belt line and that various noises would attend its use.

While the structure of the sentences and the order of the thoughts of the ordinance appear to be unusual, we think the intent to apply the rule of reason to the situation is clear. That such a rule conforms to due process has been held repeatedly and is not now debatable. This subject was discussed at great length by the Supreme Court of Ohio in the case of *State* v. *Schaeffer*, 96 Ohio St., 215, 117 N. E., 220, L. R. A. 1918B, 945, in which the court, at page 230, after discussing *Standard Oil Co. of New Jersey* v. *United States*, 221 U. S., 1, 55 L. Ed., 619, 31 S. Ct., 502, 34 L. R. A. (N. S.), 834, Ann. Cas. 1912D, 734, and *United States* v. *American Tobacco Co.*, 221 U. S., 106, 55 L. Ed., 663, 31 S. Ct., 632, said:

"It would hardly be suggested that the Supreme Court of the United States read into the statute something that made the statute unconstitutional; or read into the statute something that made it so indefinite and uncertain that it was incapable of advising the public as to what was or was not an offense under it, or that made the statute practically unenforceable. And yet, by parity of reason, it is claimed in this case that the Legislature, which wrote into the statute the same 'rule of reason,' thereby in effect nullified such statute, because of the indefiniteness and uncertainty of its terms. The contention is not sound."

Again, it is asserted that this ordinance, because it is limited to noises arising in the operation of railroads, is unconstitutional, whereas, there are other agencies that create noises. But it is not the law that to stand the test of constitutionality, the ordinance or law must be all-inclusive. This is pointed out in 11 Ohio Jurisprudence (2d), 16, Section 674, as follows:

"The fact that police legislation is confined to certain measures, and does not cover the entire field of similar possible abuses, does not render such legislation invalid. A statute does not violate the equal protection clause merely because it is not all-embracing. A state may properly direct its legislation

against what it deems an existing evil without covering the whole field of possible abuses, and it may do so even though the forbidden act does not differ in kind from those that are allowed. If a class is deemed to present a conspicuous example of what the Legislature seeks to prevent, the Fourteenth Amendment allows it to be dealt with although otherwise and merely logically not distinguishable from others not embraced in the law.''

So, we are of the opinion that this ordinance is not per se unconstitutional.

There remains the question whether the defendant's conduct constitutes a violation of its terms. It prohibits unreasonable noises, that is, unnecessary noises that would not be produced in the exercise of reasonable care in the operation of the railroad.

The rule, gleaned from the decided cases, is stated at the beginning of the annotation appearing in 6 A. L. R. to the case of *Southern Ry. Co.* v. *Fisher*, 140 Tenn., 428, 205 S. W., 126, 6 A. L. R., 717, at page 723:

''The universally accepted rule is to the effect that the operation of a lawfully constructed railroad in an ordinarily prudent and careful manner, without negligence or abuse, does not, by reason of the attendant noise, smoke, vibration, and other objectionable features which are necessarily incident thereto and which are common to the public at large, constitute an actionable nuisance, since the doing of that which has been lawfully authorized cannot constitute a nuisance.''

Twenty-four different jurisdictions supporting the statement, including Ohio, are listed.

We have examined the evidence in this record with considerable care and are forced to the conclusion that there is no substantial evidence of noises other than those necessarily incident to the normal careful operation of a railroad. It is true that switching occurred at about 2 a. m., but it does not last ordinarily more than 20 minutes and this switching was necessary if the patrons of the railroad were to be adequately served. Some people were awakened by the bumping of the cars as they moved back and forth into and out of the switch, but no standard of operation was suggested whereby this noise could be re-

duced, other than by ceasing to operate, and no suggestion that these noises were not similar in kind and volume to those that greeted the complainants when they established their homes in that vicinity has been made. There was some evidence that on the occasion in question the members of the crew communicated by word of mouth rather than by signaling with a lantern, as was usually done. This was denied by the defense witness, and we are of the opinion that it is too trivial upon which to base a finding of a violation of this ordinance.

For these reasons, we hold the court erred in overruling the defendant's motions for judgment of acquittal.

Lest it be inferred that we have overlooked the appellant's claim that this ordinance violates the "commerce clause" of the Constitution of the United States, perhaps we should say that we have considered the subject and believe it is sufficient to say that, as we have found this ordinance to be a valid police regulation, it comes within the reserved power of the state, and, therefore, is constitutional.

The judgment is reversed and the cause remanded to the Municipal Court of Hamilton, Ohio, with instructions to discharge the defendant.

*Judgment reversed.*

Ross, P. J., and Hildebrant, J., concur.